69 N.J. Super. 590 (1961)
174 A.2d 641
JOSEPH SCHIMEK AND ESSO STANDARD OIL COMPANY, A CORPORATION, PLAINTIFFS-APPELLANTS,
v.
THE GIBB TRUCK RENTAL AGENCY, ALSO KNOWN AS THE GIBB AGENCY, DEFENDANT-RESPONDENT, AND AMERICAN RUG CLEANING CO., INC., AND JUNIUS GILLETTE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 20, 1961.
*591 Before Judges GOLDMANN, FOLEY and LEWIS.
*592 Mr. Abraham P. Bab argued the cause for appellants.
Mr. Edward C. Hillis argued the cause for respondent (Messrs. Marley, Winkelried & Hillis, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiffs appeal from a judgment in favor of defendant, Gibb, entered in the County District Court on an agreed statement of facts.
Although impleaded, neither American Rug Cleaning Co., Inc. nor Gillette was before the court, plaintiffs having been under restraint from proceeding against American by an order of the Chancery Division appointing a custodial receiver for that firm, and Gillette not having been served with process.
The facts are these: American leased a motor truck from Gibb; Gillette was operating the vehicle as agent of American when it collided with and damaged plaintiffs' building. Plaintiffs brought an action against the three defendants based upon the negligence of Gillette. Concededly, the relationship of master and servant between Gibb and Gillette did not exist. The trial court held inter alia that the absence of such proof precluded a judgment against Gibb based on Gillette's negligence.
It is well settled as a matter of common law principle that an owner of a vehicle is not liable for an injury caused by the negligent driving of a borrower, if the vehicle was not in use at the time on the owner's business. Doran v. Thomsen, 74 N.J.L. 445 (Sup. Ct. 1907). And this general principle has been held to apply to the situation where a bailor for hire of a vehicle has been sought to be charged with the negligence of his bailee, the court there holding that in the absence of a showing of negligence by the bailor in renting to an irresponsible bailee, the bailor is not liable for the negligent use of the chattel by the bailee. Maurer v. Brown, 106 N.J.L. 284 (Sup. Ct. 1930). The same rule applies, of course, to use or operation by an agent *593 or servant of the bailee, since no legal privity exists between the servant and the bailor such as would charge the bailor with his negligence.
Notwithstanding this, plaintiffs contend that the effect of the provisions of R.S. 45:21-1 et seq. (L. 1926, c. 249, § 1, p. 421, as amended) was to create vicarious liability in the owner for the negligent act of a bailee of a motor vehicle or the agent or servant of the latter. The pertinent sections of the statute follow:
"`Owner' means any and every person engaged in the business of renting or leasing motor vehicles, without a driver, to be operated by the lessee or bailee, his agent or servant, for purposes other than the transportation of passengers for hire." R.S. 45:21-1.
"Every owner, as defined in section 45:21-1 of this title, shall file with the clerk of the municipality in which he resides or has his place of business a policy of insurance of a company duly licensed to transact business under the insurance laws of this state, insuring such owner against loss from the liability imposed by law upon such owner for damages on account of bodily injury or death suffered by any person other than a person in the employ of such owner, or a person in, on or about such motor vehicle in the status of a driver, passenger for hire or occupant, as a result of accidents occurring by reason of the negligent maintenance, use or operation of such motor vehicle upon the public highways of this state." (Emphasis added) R.S. 45:21-2.
"Such policy of insurance shall provide a limit of liability on the part of the insurer, exclusive of court costs and the expenses of investigating and defending suits, for each motor vehicle covered thereby, in the sum of $10,000.00 for bodily injury to or death of any 1 person, and, subject to the same limit of liability for each person so injured or killed, in the sum of $20,000.00 for bodily injury to or death of more than 1 person in any 1 accident, and for damage to property in the sum of $5,000.00, and shall provide for the payment, subject to the aforesaid limits of liability, of any final judgment recovered by any person on account of the ownership, maintenance and use of such motor vehicle by either the owner or the lessee or bailee, his agent or servant, or any fault in respect thereto, and shall be for the benefit of any person suffering loss, damage or injury as aforesaid. * * *" (Emphasis added) N.J.S.A. 45:21-3.
Where a court is called upon to construe a statute its function is to seek and carry out the Legislature's purpose *594 as fairly expressed by the statutory language. Watson v. United States Rubber Co., 24 N.J. 598 (1957). The statute is to receive a reasonable construction, to serve the apparent legislative purpose, and the inquiry in the final analysis is the true intention of the law. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956). The judicial goal is to carry out fairly the legislative purpose and plan, and history and contemporaneous construction may well furnish light as to that purpose and plan. New Jersey Pharmaceutical Ass'n v. Furman, 33 N.J. 121, 130 (1960). The latter principle implies that the legislative purpose may be illuminated by comparison of its acts with divergent acts of the legislatures of sister states dealing with similar subject matter, particularly where broad questions of public policy are involved.
At this point it is well to emphasize the fact that the insurer was not made a party to this action, and we are not concerned with its liability under the policy it filed pursuant to R.S. 45:21-1 et seq. Our problem is limited to a determination of the effect, if any, of the statute upon the liability of Gibb.
The plain design of R.S. 45:21-1 et seq. is to provide insurance coverage for the benefit of any person (with certain exceptions not relevant here) who suffers injuries or sustains property damage as a result of the liability imposed by law on a bailor of a leased motor vehicle, or a bailee, or his agent or servant. The statute deals exclusively with providing financial responsibility in the event of such loss, and has nothing whatever to do with the substantive law of liability, vis-a-vis a claimant and the person or persons sought to be charged.
In the circumstances presented, the liability imposed by law on Gillette was to respond for his own negligent act, and the liability of American was to answer for Gillette's negligence under the doctrine of respondeat superior. But the liability imposed by law on Gibb required proof that American through Gillette, or Gillette himself, was acting *595 in Gibb's behalf. See Doran v. Thomsen, supra; Maurer v. Brown, supra.
In support of their argument that the statute imposed on Gibb vicarious liability for the negligence of the bailee and its servant, plaintiffs cite Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163 (Sup. Ct. Err. 1928), and Feitelberg v. Matuson, 124 Misc. 595, 208 N.Y.S. 786 (Mun. Ct. 1925). Neither case is apposite since both were brought under statutes which, although dealing with the responsibility of an owner of a vehicle for injuries suffered as the result of the use or operation of it on a public highway, provide remedies vastly different in nature and extent from R.S. 45:21-1, supra. The Connecticut statute, Pub. Acts 1925, c. 195, § 21 (1949 Rev. § 2479) provides:
"Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased."
Thus, as noted in Levy, supra, the statute made the liability of the person renting motor vehicles a part of every contract of hiring a motor vehicle, 108 Conn., at page 337, 143 A., at page 164, and created a direct right of action against the owner which did not depend for its success upon establishing agency between the operator and the owner. In Graham v. Wilkins, 145 Conn. 34, 138 A.2d 705 (Sup. Ct. Err. 1958), the court, in holding that the admissions of an operator of a leased vehicle were to be regarded as admissions of the lessor, said that since the basic idea of the statute is to make the owner as liable as the operator for damages caused by operation of the car by one in lawful possession thereof pursuant to a rental contract, the admissions were evidential not on any theory of agency, since there was no relationship of agency between them, but because "by virtue of the express terms of the statute the owner-lessor is made the alter ego of the operator so that *596 the latter's acts with respect to the operation of the car * * * [were] in law the acts of the owner-lessor."
The New York statute provides:
"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." N.Y. Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, Art. 11 § 388, formerly § 59.
As distinguished from the New Jersey and Connecticut enactments, the scope of the New York Act embraces all motor vehicles which are on the public highway with the permission of the owner thereof. In Mills v. Gabriel, 259 App. Div. 60, 18 N.Y.S.2d 78 (App. Div. 1940), affirmed 284 N.Y. 755, 31 N.E.2d 512 (Ct. App. 1940), the court said that the purpose of the statute was to change the common law by making the owner liable for the negligence of a person legally operating the car with permission, express or implied, of the owner.
Analysis of the Connecticut and New York statutes and the constructions given them by the courts of those respective states, clearly demonstrates that it was intended that vicarious liability of the owner, in derogation of the common law, be created. The very fact that our Legislature has not seen fit to thus broaden the liability of owners of leased vehicles, despite the existence of legislation to this effect adopted by sister states, serves to emphasize a legislative policy that the fruits of the insurance provided by the statute in question are available only to those who have established the common law liability of the owner, or the bailee or his agent or servant.
Since the requisite proof of agency between Gillette and Gibb was absent the common law liability of Gibb was not established, and the judgment in its favor was properly entered.
Affirmed.